**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfred Tennyson SMURTHWAITE, Jr., Defendant-Appellant.**

**No. 77–1615.**

United States Court of Appeals, Tenth Circuit.

Submitted May 4, 1978.

Decided Jan. 25, 1979.

Sumner J. Hatch, Salt Lake City, Utah, for defendant-appellant.

Ronald L. Rencher, U. S. Atty. and Steven W. Snarr, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Alfred Tennyson Smurthwaite, Jr., was convicted by a jury on eleven counts of illegally dispensing and distributing controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2. On appeal, he claims there was a lack of evidence on the general course of practice of a naturopathic physician, which requires a judgment of acquittal. He also argues that the jury's finding him innocent on one count of the indictment, but guilty on the others, shows confusion concerning the court's instructions or a lack of evidence to support the verdicts.

Smurthwaite is a naturopathic physician practicing in Salt Lake City. He was charged with the illegal dispensation and distribution of amphetamine drugs (Diphylet, Preludin and Ionamin) in the various counts of the indictment. The government's evidence consisted principally of testimony of four undercover narcotics officers working either for the federal government or local law enforcement agencies, who procured prescriptions for these drugs from defendant Smurthwaite during visits to his office.

The testimony of each agent was substantially similar. He first went to the doctor's office with another person who had been there before, generally one of the other agents. Upon being introduced to Smurthwaite he immediately asked for a prescription for amphetamines. After having him fill out a patient's card, but with no physical examination, no questions asked about health, medical history or the like, Smurthwaite would write a prescription, charging $7 for each one written. On a second or subsequent visit, Smurthwaite would check the patient's card to see if 30 days had elapsed (the prescriptions apparently were for 30 tablets, and provided one tablet per day dosage). If 30 days had not elapsed he would refuse to renew that prescription, but would write one for a different drug on the controlled substance list, usually Ionamin, or would write one for the patient's absent purported wife, provided the 30-day period had run on her prior prescription. These office visits lasted a very short time, some less than five minutes. The agents testified that on two occasions Smurthwaite indicated that he knew the purchasers were using the pills for parties and not for weight control.

Undercover officers testified that while they had indicated "too fat" or something similar on the patient's cards with respect

to their ostensible need for the prescriptions, they did not put their weights down on the cards. Dr. Smurthwaite himself put figures on some of the cards that overstated their weights by a considerable amount. One of the officers who obtained a prescription was a relatively thin person, and the defendant wrote him one prescription but told him not to come back, because he was too thin.

In the prosecution's case-in-chief, no evidence was introduced about the usual course of the practice of a naturopathic physician. Alleging such evidence was required, defense counsel moved for acquittal at the end of the state's case. The court deferred ruling on the motion, and eventually denied it after the completion of the trial.

The only defense evidence was Dr. Smurthwaite's testimony. He testified that he was prescribing the drugs for weight reduction and the doses given were normal. He denied telling the undercover narcotics officers he knew the pills were being used for parties. He testified that his practices were normal for a weight control prescription practice, and that he had asked certain questions concerning allergies and the like which gave him sufficient medical history without the need for a physical examination.

After the defense rested the government presented another naturopathic physician as a rebuttal witness, who testified about the usual medical procedures followed by members of his profession. He stated it was not the usual practice to prescribe drugs to a patient without conducting a physical examination, obtaining a written medical history, inquiring about symptoms and complaints. It was not the usual practice to prescribe a specific drug asked for by the patient nor to prescribe drugs for use at parties. He admitted his practice was not as a weight control specialist, and he personally prescribed weight control drugs only when his patients had other physical problems.

I

In determining whether a motion for acquittal was improperly denied we must consider the evidence in the light most favorable to the government, and the verdict will not be set aside if supported by substantial evidence. *Speers v. United States*, 387 F.2d 698 (10th Cir.), *cert. denied*, 391 U.S. 934, 88 S.Ct. 1844, 20 L.Ed.2d 853 (1967).

The indictment charged that defendant's acts were "outside the usual course of professional practice," and 21 C.F.R. § 1306.-04(a) exempts from the prohibitions of 21 U.S.C. § 841(a)(1) prescriptions by a medical practitioner "in the usual course of his professional practice." Since defendant is a naturopathic physician licensed under Utah law and authorized to write prescriptions, the claim is made that defendant's motion for acquittal should have been granted for failure of the government to show what was the usual course of practice for such a physician.

There was evidence, summarized above, by a naturopathic physician brought in by the government as a rebuttal witness, after the government had presented its case-in-chief. In many cases in this circuit the government has been permitted to reopen or otherwise present evidence to cure a defect in its proof after it has completed presentation of its case-in-chief, and after a motion for acquittal by the defendant based upon the defect. *E. g., United States v. Moehring*, 446 F.2d 516 (10th Cir. 1971); *United States v. Skolek*, 474 F.2d 582 (10th Cir. 1973); *United States v. Keine*, 424 F.2d 39 (10th Cir.), *cert. denied*, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970). We have also held that permitting evidence in rebuttal that should have been introduced in the case-in-chief rests within the discretion of the trial court. *Hoffman v. United States*, 68 F.2d 101, 103 (10th Cir. 1933). Cf. *United States v. Pennett*, 496 F.2d 293, 299 (10th Cir. 1974).

It is argued that since the government's expert was not familiar with a weight control practice his testimony is insufficient to show the usual course of practice for a

naturopathic physician so specializing. We do not decide this matter, because we hold that it was not essential to support this conviction that any evidence of the usual course of a professional practice be presented. In *United States v. Bartee*, 479 F.2d 484 (10th Cir. 1973), the conviction of a medical doctor who prescribed forbidden drugs to undercover narcotics agents, without requiring a medical examination, was upheld. There was conflicting evidence as to what was the usual course of practice; this court noted the conflict, but also added:

> [T]he jury is not bound by such expert testimony and may, of course, consider all of the facts and circumstances surrounding the prescribing as related by lay witnesses.

*Id.* at 488.

In *United States v. Larson*, 507 F.2d 385 (9th Cir. 1974), an opinion which relied heavily upon *Bartee*, the court specifically held it was not necessary for conviction under 21 U.S.C. § 841(a)(1) to have expert medical testimony on the usual course of practice, where the other evidence is clear. *United States v. Badia*, 490 F.2d 296 (1st Cir. 1973), is another case where apparently no evidence concerning the usual course of a physician's practice was introduced, and the principal evidence was testimony of an undercover narcotics agent about prescriptions written for him. The conviction was affirmed without any discussion of the "usual course of practice" issue.

We can conceive of situations where evidence as to the usual practice might be essential to proof of the government's case. But here there is evidence of conduct clearly outside the usual course of any professional practice. There is direct testimony that the defendant stated that he knew the purchasers intended to use the pills at parties; that fees were charged in accordance with the number of prescriptions written, rather than on an office call basis; that prescriptions were given for absent purported wives under circumstances where there was no discussion of the wife's need but only of the fact that the purported husband had not yet completed his 30-day wait since the last prescription, the time-lapse necessary to have one issued in his name. Here no medical history or examination was taken, except an estimated weight was put on a card by the doctor without even asking the individual. There were conflicts, of course, between the doctor's testimony and the witnesses', but the resolution of those conflicts was for the jury. We hold there is ample evidence in the record to support the jury verdict.

II

■ Smurthwaite argues that the fact the jury found him not guilty on Count I of the indictment but guilty on other counts indicates confusion on the part of the jury, or lack of evidence sufficient to support the verdict. We do not agree. While the testimony was quite similar as to all of the visits to the Smurthwaite office, there were several transactions on several different dates. Count I, upon which there was no conviction, was the only one charged with respect to the February 14, 1975, visit. Each count is a separate offense and the jury is the trier of fact. The mere fact that it finds that the government's burden was not met with respect to one count but was with respect to others does not establish invalidity. Consistency in the verdict is not necessary. *Lowther v. United States*, 455 F.2d 657 (10th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972). *Lowther* involved securities fraud, but the pattern of evidence and the contentions of the appellants were nearly identical to those made in this case. *See also, Speers v. United States*, 387 F.2d 698 (10th Cir.), *cert. denied*, 391 U.S. 934, 88 S.Ct. 1844, 20 L.Ed.2d 853 (1967).

The convictions are affirmed.