**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Terrance Charles SPITZ, Tom Roland,
and Tom Lloyd Crouch,
Defendants-Appellants.**

**Nos. 81–1185, 81–1199 and 81–1200.**

United States Court of Appeals,
Tenth Circuit.

May 19, 1982.

Chris Lackmann of Hank Farrah & Associates, Albuquerque, N. M., for defendant-appellant Terrance Charles Spitz.

Scott McCarty of D'Angelo, McCarty & Vigil, Albuquerque, N. M., for defendant-appellant Tom Roland.

Patrick H. Kennedy, Albuquerque, N. M., for defendant-appellant Tom Lloyd Crouch.

Stanley K. Kotovsky, Jr., Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Defendants Terrance Charles Spitz, Tom Lloyd Crouch, and Tom Roland appeal their convictions for manufacturing methamphetamine, and Spitz and Crouch appeal their convictions for possessing methamphetamine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On appeal all defendants claim that the government's conduct was so outrageous as to violate their due process rights. Roland makes two other arguments: (1) by finding him guilty of manufacturing methamphetamine and not guilty of possessing methamphetamine with intent to distribute it, the jury rendered inconsistent verdicts; and (2) by failing to supply him with a doctor's competency report and a complete transcript of a witness's testimony, the prosecutor violated his due process rights.

In October 1980 a government informant, Edmund Clark, told David Littrell that Clark knew someone who would supply Littrell with phenyl-2-propanone (P2P), a controlled substance that can be chemically changed into methamphetamine, if, in exchange, Littrell would give the supplier some methamphetamine. Littrell was interested and subsequently spoke to Clark's supplier, Robert Hastings, who, unknown to Littrell, was a Drug Enforcement Administration (DEA) agent. After a series of telephone calls, Hastings offered to provide Littrell with a 500 gram bottle of P2P in exchange for three ounces of the methamphetamine produced from it. Littrell agreed and accepted the bottle of P2P. Other agents then followed Littrell, who drove with Spitz, Roland, and Crouch, to a remote ranch house. That same day, after obtaining a search warrant, government agents entered the ranch house and found Littrell and the defendants dismantling a chemical laboratory. The agents seized several packages of methamphetamine, chemical supplies, and equipment commonly used to manufacture methamphetamine, and arrested Littrell and the defendants.

Defendants were indicted for manufacturing methamphetamine and possessing it with intent to distribute.[1] A jury found Crouch and Spitz guilty on both counts, and Roland guilty on the manufacturing count.

I

Relying on the Supreme Court's statement in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–1643, 36 L.Ed.2d 366 (1973), that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction," the defendants contend the trial court erred in denying their motion to dismiss because of the government's conduct.[2]

---

1. Littrell pleaded guilty to conspiring to manufacture methamphetamine with intent to distribute it. He testified at the defendants' trial as a government witness.

2. The government argues that because Hastings gave P2P to Littrell, not the defendants, and because the defendants never had any contact with government agents prior to the defendants' arrest, they lack standing to challenge the government's conduct. To have standing, a party must allege "such a personal stake in the outcome of the controversy as to assure the concrete adverseness" that Article III requires. *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (quoting *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). In the instant case, since Spitz, Roland, and Crouch all have been detrimentally affected by the govern-

We disagree. The defendants principally object to the government's supplying P2P to Littrell.[3] But in *Russell* the Court held that a government agent's delivery of P2P to individuals involved in the manufacture of methamphetamine was not, by itself, outrageous conduct. *Id.* at 432, 93 S.Ct. at 1643. Recognizing the difficulties in obtaining evidence to convict persons who illegally manufacture drugs, the Court approved "one of the only practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices." *Id.*

The defendants attempt to distinguish *Russell* by noting that at the time of that decision, P2P had not yet been classified as a controlled substance. Thus, unlike *Russell*, in the instant case the government supplied an *illegal* substance. However, P2P is the chemical precursor of methamphetamine and is useful only in its manufacture. *See Hampton v. United States*, 425 U.S. 484, 492 n.1, 96 S.Ct. 1646, 1651 n.1, 48 L.Ed.2d 113 (Powell, J., concurring); R. III, 28. Even before P2P was made illegal, it was very difficult to obtain. *Russell*, 411 U.S. at 427, 93 S.Ct. at 1640. In this case we see no legally significant distinction between supplying a scarce but legal substance useful solely for the manufacture of an illegal substance and supplying an illegal substance. *See Hampton*, 425 U.S. at 491–92, 96 S.Ct. at 1650–1651 (Powell, J., concurring) (distinction is without a difference). In *Hampton* the Court removed any doubt about *Russell's* application to the government's supplying illegal substances by approving the government's actions in allegedly selling heroin to Hampton and then later purchasing the same heroin from him.

The defendants also attempt to distinguish *Russell* by noting that the *Russell* defendants were predisposed to engage in the criminal behavior, as evidenced by their having operated a methamphetamine manufacturing laboratory for seven months prior to the government's involvement, while in the instant case the defendants had no preexisting laboratory, and the government, in effect, induced the defendants to set up one. Although it appears no laboratory existed before Littrell was given the P2P, substantial evidence indicates Littrell was very interested in obtaining P2P so he and his associates could produce methamphetamine, R. II, Exhibit A, and that at least some of the defendants were experienced in its manufacture. R. II, Exhibit A, 10–11. We read *Russell* as approving a government agent's supply of P2P to individuals with a preexisting interest in manufacturing methamphetamine, whether or not they had a preexisting laboratory.

In light of the Supreme Court's approval of the government's conduct in *Russell* and in *Hampton*, the government's actions in the instant case fall short of conduct "shocking to the universal sense of justice." *See Russell*, 411 U.S. at 432, 93 S.Ct. at 1643 (quoting *Kinsella v. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)). We therefore hold that the trial court did not err in denying the defendants' motion to dismiss.

## II

Roland claims that in finding him guilty of manufacturing methamphetamine but not guilty of possessing it with the intent to distribute, the jury rendered inconsistent verdicts, requiring that Roland either be acquitted or granted a new trial. However, we believe the verdicts were not necessarily inconsistent: the jury could have concluded that Roland aided the other defendants and Littrell in manufacturing

---

ment's conduct, they have standing to complain. *See United States v. Twigg*, 588 F.2d 373, 381–82 (3d Cir. 1978).

3. The defendants also complain that the government's pervasive involvement in the transaction, in particular that the government's persistence in closing the drug deal with Littrell, in effect, forced the defendants to produce methamphetamine. However, the record does not support the defendants' complaint. Other than supplying the P2P, the government's conduct essentially involved telephone negotiations with Littrell about the P2P's sale, which we find unobjectionable. The record also demonstrates that Littrell voluntarily agreed to produce methamphetamine.

the methamphetamine, but did not intend to distribute the material or aid in its distribution. Even if the jury's verdicts were inconsistent, that would not necessitate acquitting Roland or granting him a new trial. *See United States v. Smurthwaite*, 590 F.2d 889, 892 (10th Cir. 1979); *United States v. Dennett*, 551 F.2d 261, 262 (10th Cir. 1977); *Lowther v. United States*, 455 F.2d 657, 663 (10th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972).[4]

### III

Finally, Roland complains that the prosecutor did not provide him with a complete transcript of the hearing on Littrell's guilty plea. The omitted portions include (i) statements by Littrell's counsel that Littrell had recently been beaten up by "persons who may or may not be connected with codefendants in this case," R. III, 140, and was afraid for his life, (ii) the terms of Littrell's guilty plea agreement, (iii) the trial court's determination that Littrell was competent to plead guilty, and knowingly and voluntarily was waiving his criminal trial rights, and (iv) Littrell's sentencing date. Roland also complains that the prosecutor did not provide him with a copy of a doctor's report finding Littrell competent to plead guilty. Roland contends that in failing to provide him with a complete transcript of Littrell's guilty plea hearing and the doctor's competency report, the prosecutor deprived Roland of the effective ability to cross-examine Littrell, who testified as a government witness.

We can easily reject Roland's complaint about the doctor's competency report. During the competency hearing, the trial court ordered the report sealed, but made it available to counsel upon request. R. III, 146. The prosecutor, therefore, did not possess the report, and Roland does not allege that the trial court denied him access to it.

Nor do we accept Roland's complaint about the undisclosed portions of the transcript. Neither before nor during trial did Roland specifically request the transcript. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court considered a prosecutor's responsibility to turn over exculpatory information not specifically requested by a defendant. The Court stated, "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.* at 109–10, 96 S.Ct. at 2400. The omitted information must create a reasonable doubt of the defendant's guilt that did not otherwise exist. *Id.* at 112, 96 S.Ct. at 2401. We have reviewed the record and conclude that the omitted portions of the transcript do not raise a reasonable doubt about Roland's guilt.

AFFIRMED.

---

4. As a part of his argument on inconsistent verdicts Roland complains about the prosecutor's misleading comments in closing argument. Roland specifically objects to the prosecutor's statements that a defendant may be convicted of aiding and abetting in a crime if he provides "some service that is needed in the process"; R. V, 453–54, and to the prosecutor's insinuation that by providing use of the ranch, serving as a lookout, opening windows and fanning doors to clear out the smell, and washing beakers, Roland aided and abetted the others. As to the prosecutor's statements about the law of aiding and abetting, the trial court corrected any misstatement by admonishing the prosecutor, "I'll give the instructions. You go ahead," R. V, 454, and then later properly instructing the jury on aiding and abetting. As to the prosecutor's suggestion that Roland had provided the ranch and done certain tasks in order to aid and abet the others, we find no impropriety. At closing argument, a prosecutor may argue the inferences that reasonably can be drawn from the evidence. *United States v. Nolan*, 551 F.2d 266, 274 (10th Cir.), *cert. denied*, 434 U.S. 904, 98 S.Ct. 302, 54 L.Ed.2d 191 (1977).