UNITED STATES of America

v.

Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.

No. SSS 82 Cr. 0312 (KTD).

United States District Court, S.D. New York.

March 10, 1983.

As Amended March 10, 1983.

310

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for the Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., New York City, of counsel.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York ·City, for defendant Edward Joseph.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Defendants Ferguson and Joseph filed supplemental motions on January 3, 1983, in response to the third superseding indictment. The government has fully complied with requests 2(c), 2(d), 2(f), 2(h), 2(i) and 2(j). Only the contested requests, therefore, will be discussed herein.

### 1. Discovery and Particulars

#### a. Photos of Shakur, Dalton, and Rosenberg

■ Defendants request photographs of their fugitive co-defendants "which we need in our investigation as we prepare for trial." This request is denied. Fed.R. Crim.P. 16(a)(1)(C) states that the government shall permit inspection of photographs "material to the preparation of [the] defense." Other than an amorphous investigative "need" for these photos, no basis is offered in support of this motion. The government, pursuant to Rule 16, will provide copies to the defense of any photographs of fugitive co-defendants that it intends to introduce in its direct case at trial.

#### b. Photos of Samuel Brown, Kamau Bayette, and Tyrone Rison

■ The defendants request photographs of these unindicted co-conspirators whom they believe are government informants. These photos are "needed in our [defense] investigation." This request is denied. As in (a) above, there is no basis to support this vague request. Furthermore, the potential danger posed to unindicted conspirators who might testify against the defendants militates against disclosure of these photos. Again, if any such photos are intended to be offered at trial, the government must produce copies to the defendants in accordance with Rule 16.

#### c. Brady material

I ordered the government in my February 25, 1983 endorsement to turn over all Brady material relevant to these defendants' prior motions. This order is hereby expanded to include all Brady material on this indictment. The March 21, 1983 trial date is imminent and necessitates trial preparation by both sides.

■ The government has stated that it recognizes its duty under Brady v. Maryland, to produce prior to trial exculpatory evidence that might affect the outcome of the trial. See United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397–98, 49 L.Ed.2d 342 (1976). It is the prosecutor who decides what evidence, if any, should be voluntarily submitted to defense counsel in accordance with Brady. Id. at 107, 96 S.Ct. at 2399. The district court judge only becomes involved in matters of pre-trial discovery of Brady material in those extraordinary instances in which information is submitted for in camera review. Otherwise, the prosecution must be aware of its obligations and is expected to act accordingly and not to "sparingly produce" exculpatory evidence. United States v. Shields, 675 F.2d 1152, 1160 (11th Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 130, 74 L.Ed.2d 112 (1982).

■ In this case, Judge Weinfeld did not require the government to disclose to defense counsel the identity and statements of all eyewitnesses who failed to identify a particular defendant. 543 F.Supp. 1059, 1061. The government has agreed to "inform counsel of the approximate number of witnesses who were afforded an opportunity, but failed, to identify their clients, and will give them an opportunity to interview any eyewitness whose identification statements exculpate the defendant." January 25, 1983 Affidavit of Stacey J. Moritz at 6. I can only emphasize at this time the government's duty under Brady and note the possibility that evidentiary omissions on the issue of identification may in certain circumstances constitute constitutional error. United States v. Agurs, 427 U.S. at 112–13, n. 21, 96 S.Ct. at 2401–02, n. 21. Any judicial determination, however, on possible violations of Brady must include an evaluation of the entire record and can only appropriately be made post-trial. Id.; United States v. Spitz, 678 F.2d 878, 882 (10th Cir.1982).

#### d. Ferguson photo spread

■ The April, 1980 Inwood robbery is included as a predicate act of racketeering in ¶ 6(c) of the indictment. The government does not allege and indicates that it does not intend to offer proof at trial that Ferguson was involved in this robbery. It is therefore unnecessary for the govern-

ment to produce a photo spread of defendant Ferguson regarding this robbery.

## 2. *Tapes and Transcripts at M.C.C.*

█ Defendants Ferguson, Joseph, Sunni-Ali and Odinga, who are housed at the M.C.C., request that one full set of transcripts and tapes be delivered to them in custody along with the necessary electronic equipment. Mr. Odinga, who is now appearing *pro se,* is entitled to the transcripts and tapes made available to his former attorney, Mr. Kunstler. It is necessary for the remaining defendants also to have access to the tapes and transcripts to assist in their defense. Accordingly, the government is ordered to produce as soon as possible one full set of transcripts and tapes to the M.C.C. for the use of Ferguson, Joseph and Sunni-Ali.

The equipment request poses a different problem. The government does not have tape players available to supply to the defendants. The defendants are ordered first to try and solve this dilemma through institutional channels. If a satisfactory resolution is not forthcoming, the defendants are free to return to this court for intervention.

## 3. *Audibility Hearing*

█ The defendants request an immediate audibility hearing to decipher the tapes on which the government in part bases its probable cause to arrest, search and seize. An immediate hearing will only become necessary if the government's other foundations for probable cause collapse. Until such time as a ruling to that effect is made, the defendants' request for an audibility hearing to be held in conjunction with the suppression hearing is denied.

## 4. *Penetration of the Defense Camp*

█ The defendants move for a hearing "to ascertain the degree to which government informant Samuel Brown infiltrated the defense camp and the extent to which he provided information so gained to the F.B.I. and to the prosecution." Any information gained in this manner allegedly taints the government's case. *See Weath-*

*erford v. Bursey,* 429 U.S. 545, 552, 97 S.Ct. 837, 842, 51 L.Ed.2d 30 (1977) (defendants due process rights violated if information relayed to prosecutor as a result of joint counsel meetings with informant "produced, directly or indirectly, any of the evidence offered at trial."); *Briggs v. Goodwin,* 698 F.2d 486 at 493–95 (D.C.Cir.1983). Brown invoked his Fifth Amendment rights and refused to testify at pre-trial hearings. Whether there is any "taint" on the government's case requires analysis of all evidence garnered against the defendants and therefore can only properly be resolved after the trial. *See United States v. Ostrer,* 481 F.Supp. 407, 414–15 (S.D.N.Y.1979), and cases cited therein.

## 5. *Speedy Trial*

█ Defendants do not make a motion under the Speedy Trial Act but instead pose questions to the government to assist them in preparing such a motion. These questions are properly the subject of a speedy trial motion and the government need not respond until such time as a motion is made.

## 6. *Grand Jury Abuse*

Resolution of the issue of grand jury abuse raised by the defendants is reserved until a later date.

In sum, the defendants are denied production of photographs of Shakur, Dalton, Rosenberg, Brown, Thomas and Bayette; the defendants are also denied production of the Ferguson Inwood robbery photo spread; tapes and transcripts are to be provided to the defendants in accordance with this memorandum; and all *Brady* material is to be turned over at the appropriate time.

SO ORDERED.