UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Edward CLONTS,
Defendant–Appellant.

No. 91–2044.

United States Court of Appeals,
Tenth Circuit.

June 15, 1992.

Don J. Svet, U.S. Atty. (Tara C. Neda, Asst. U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Stephen M. Wheeler of Wheeler Law Offices, Denver, Colo., for defendant-appellant.

Before SEYMOUR, ANDERSON, and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Defendant-Appellant, Charles Edward Clonts, was convicted by a jury of conspiracy to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. § 846, and 18 U.S.C. § 2, and possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). On appeal Defendant argues that, because of an alleged defect in the chain of custody of the marijuana, there was insufficient evidence to sustain his conviction; that the government's conduct was so outrageous the case should have been dismissed; that he received ineffective assistance of counsel; and that the court erred in accepting an estimated net weight for the marijuana when calculating a base level of 20 under U.S.S.G. § 2D1.1(c)(12) for sentencing purposes. Because we find no merit in Defendant's contentions, we affirm.[1]

*Facts*

Testimony at trial established that in June 1990 Defendant was introduced to Mr. Jimmy Searles, a special agent with the United States Customs Service who was working undercover investigating narcotics violations. Rec. Vol. I at 7–9. After subsequent meetings and conversations with Agent Searles, Defendant eventually asked Agent Searles to "front" him twenty-five pounds of marijuana, which the agent agreed to do.[2] *Id.* at 13. Defendant told Agent Searles that a friend of his was a pilot who would fly him to Tucson where the marijuana would be sold. *Id.* at 14.

Agent Searles ultimately agreed to front Defendant one hundred pounds of marijuana, filling three large suitcases. *Id.* at 16. When asked if he could handle that much in a Cessna 150, Defendant replied, "Oh, we can handle that. That's no problem." *Id.* When Agent Searles and a fellow agent met Defendant at the Las Cruces

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

2. To "front" in this transaction meant that Agent Searles would give Defendant the marijuana, Defendant would sell it, and from the proceeds would pay Agent Searles his asking price.

airport to transfer the marijuana, Defendant was asked whether he was "[r]eady to do it." He indicated that he was. *Id.* at 18. He and the two agents each took one of the suitcases from the trunk of the agents' car and carried them to the plane. *Id.* When the three men reached the plane, Defendant placed all three suitcases in the plane's back compartment. *Id.* After the two agents left, other agents from the Customs Service surrounded the plane and arrested Defendant. *Id.* at 19.

*Chain of Custody*

■ On appeal, Defendant argues that the testimony concerning the chain of custody of the marijuana and the analysis of the evidence was insufficient to sustain a guilty verdict. He points out that no marijuana was introduced at trial, that the three empty suitcases which were introduced at trial had not been marked as evidence and were only identified visually by the government's witness as being the ones involved in the transaction, that the marijuana bricks had not been marked as evidence, either before or after they were removed from the suitcases, and that the only identification of marijuana during the trial came when Agent Searles testified that upon smelling the suitcases he concluded that they had contained "[s]ome pretty good quantity of marijuana." *Id.* at 19. Additionally, Defendant complains that each individual package was not tested to verify that it was marijuana, and that, while Defendant stipulated that the substance sent to the United States Customs Service Laboratory in New Orleans by case agent Bart Skelton was marijuana, there was no proof that the substance analyzed by the lab actually came from the suitcases.

■ The degree of proof needed to establish an uninterrupted chain of custody depends upon the nature of the evidence at issue. If the evidence is unique, readily identifiable and resistant to change, the foundation for admission need only be testimony that the evidence is what it purports to be. *United States v. Cardenas*, 864 F.2d 1528, 1531 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). Alternatively, if the evidence is open to alteration or tampering, or is not readily identifiable, the trial court requires a more elaborate chain of custody to establish that the evidence has not been tampered with or altered. *Id.* Because the marijuana here is not unique or resistant to alteration, a sufficient chain of custody is required to support its admission. Once admitted, however, whatever deficiencies remain in the chain of custody go to the weight of the evidence, not its admissibility. *Id.* "[T]he jury evaluates the defects and, based on its evaluation, may accept or disregard the evidence." *Id.*

In this case, Mr. Bart Skelton, the case agent, testified that he took custody of the suitcases on July 13, 1990, Rec. Vol. I at 58, the day of Defendant's arrest, *id.* at 16. They were delivered to him by the agent who had confiscated the suitcases at the time of the arrest, and who identified them at trial as the ones pertaining to this case. *Id.* at 54–55. The suitcases were admitted into evidence without objection. *Id.* at 56.

Agent Skelton further testified that he inspected the contents of the suitcases when he received them on July 13 and that he weighed and sampled the marijuana located inside two days later. *Id.* at 58. That same day, he shipped several samples to the New Orleans lab. *Id.* at 59. After this testimony, the following stipulation was read to the jury:

1. The substance delivered to the United States Customs Service Laboratory by Special Agent Bart Skelton for testing was found to be marijuana.

2. The marijuana weighed less than 50 kilograms.

3. Marijuana is a schedule I controlled substance.

4. This stipulation may be read during the course of the trial and may be admitted as an exhibit.

*Id.* Defendant now argues that this stipulation merely concedes that the substance analyzed at the lab was marijuana, but that there was no proof that the substance from the suitcases was that actually analyzed by the lab or that the substance eventually analyzed by the lab was even related to his

case. He contends that the direct evidence, even when bolstered by the stipulation, is insufficient to sustain his conviction. We disagree.

The stipulation was signed by the Defendant, his attorney and the attorney for the government. *Id.* Because the marijuana was the subject of the charges against Defendant, it is safe to infer that, at the time the stipulation was signed, all parties were describing the relevant marijuana. Defendant's chain of custody argument appears to us as an afterthought which is logically unsupportable, given the fact of a stipulation, executed in preparation for trial, with no caveat or exception made for a chain of custody issue.

The standard required is a chain of custody "with *sufficient completeness* to render it *improbable* that the original item has either been exchanged with another or been contaminated or tampered with." *Cardenas,* 864 F.2d at 1531 (quoting E. Cleary, McCormick on Evidence § 212 at 668 (3d ed. 1984)). Given the fact of the stipulation and the direct evidence regarding the chain of custody of the marijuana, we cannot say that the district court abused its discretion in finding it improbable that the evidence had been materially altered and in admitting testimony regarding it into evidence. *See Cardenas,* 864 F.2d at 1532.

*Claim of Outrageous Government Conduct*

■ Defendant's contention that his case should have been dismissed because of the nature of the government's conduct is also without merit. We review this issue de novo. *United States v. Williams,* 791 F.2d 1383, 1386 (9th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986).

The Supreme Court, in dictum, has noted that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." *United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973), *quoted in United States v. Fadel,* 844 F.2d

1425, 1429 n. 3 (10th Cir.1988). This defense, however, has been severely limited, *Fadel,* 844 F.2d at 1429 n. 3 (dictum), and requires a defendant to "establish that the police conduct is 'shocking to the universal sense of justice.'" *Id.* (quoting *United States v. Spitz,* 678 F.2d 878, 881 (10th Cir.1982)). To reach this extreme, as an example, the government must engineer and direct the criminal enterprise from beginning to end. *United States v. Ramirez,* 710 F.2d 535, 539 (9th Cir.1983); *United States v. Citro,* 842 F.2d 1149, 1153 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). The government's conduct in this case does not approach this standard.

■ While the government did provide the marijuana and agreed to the business terms of the transaction, it was Defendant who initiated the crime by asking Agent Searles to "front" him some marijuana to sell. Defendant arranged for the transportation, secured the services of a pilot and indicated that he had buyers in Tucson ready to complete the sale. Even substantial participation by a government agent does not necessarily amount to outrageous conduct. *See, e.g., Russell,* 411 U.S. at 431–32, 93 S.Ct. at 1642–43 (undercover agent supplied defendant an essential chemical for manufacture of methamphetamine); *United States v. Leroux,* 738 F.2d 943, 948 (8th Cir.1984) (FBI agent bought stolen cars from defendant in "sting" operation). The role of the government here is not "shocking to the universal sense of justice," *Spitz,* 678 F.2d at 881, and the district court did not err in refusing to dismiss the case against Defendant based on outrageous government conduct.

*Ineffective Assistance of Counsel*

■ We review Defendant's claim of ineffective assistance of counsel de novo, *Supre v. Ricketts,* 792 F.2d 958, 961 (10th Cir.1986), to determine whether counsel's performance was deficient and whether that deficiency was prejudicial to Defendant, *Strickland v. Washington,* 466 U.S. 668, 687, 691–92, 104 S.Ct. 2052, 2064,

2066–67, 80 L.Ed.2d 674 (1984).[3] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. There is a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. at 2065. To overcome this presumption, Defendant must demonstrate that, but for the unprofessional performance of his counsel, there is a reasonable probability that the result of his trial would have been different. *Id.* at 694, 104 S.Ct. at 2068. Defendant has failed to make this showing.

As examples of his counsel's ineffectiveness, Defendant points to counsel's statement in opening argument acknowledging Defendant's willingness to accept twenty-five pounds of marijuana from the government, his remark in closing that there was no question but that Defendant was trying to commit a crime, and his failure to correct in his closing argument the impression left by the government in its closing that Defendant was making a profit of $50,000 on the marijuana. Defendant postulates that counsel's admission of Defendant's willingness to accept twenty-five pounds of marijuana (and not the one hundred pounds eventually transferred) was a misguided effort to prove the absence of any agreement regarding the ultimate amount of marijuana to be exchanged. Defendant further argues, however, that because an undercover agent is not a member of a conspiracy, *United States v. Martino,* 648 F.2d 367, 405 (5th Cir.1981), *cert. denied,* 456 U.S. 943, 102 S.Ct. 2006, 72 L.Ed.2d 465 and 456 U.S. 949, 102 S.Ct. 2020, 72 L.Ed.2d 474 (1982), the amount of marijuana finally agreed upon was irrelevant, and argument revealing Defendant's willingness to accept twenty-five pounds guaranteed conviction.

Defendant's showing of prejudice from his counsel's conduct, however, must be made "in view of the strength of the government's case." *United States v. Miller,* 907 F.2d 994, 997 (10th Cir.1990). Here, part of the government's case was a tape recording of a conversation between Defendant and Agent Searles in which Defendant negotiated for at least twenty-five pounds of marijuana to be "fronted" by Agent Searles and delivered to Defendant at the Las Cruces airport. Even if counsel had not referred to his client's willingness to accept twenty-five pounds of marijuana, Defendant could hardly have denied involvement. Given the strength of the government's case, counsel's performance cannot be said to have prejudiced Defendant or to have amounted to a reasonable probability that Defendant would not have been convicted. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Defendant's argument that his counsel failed to challenge a misimpression created by the government during its closing argument that Defendant stood to make a $50,-000 profit from the drug sale is insufficient to demonstrate ineffective assistance of counsel. The dollar amount referred to by the government in closing explicitly related to the total value of one hundred pounds of marijuana. Rec. Vol. II at 79. It was used to underscore the point that this large amount of marijuana was intended for distribution and not for personal consumption. Counsel's failure to revisit this issue in his closing remarks did not rise to the level of ineffective assistance.

### *Calculation of Amount of Marijuana*

■ Finally, Defendant contends that his sentence was improperly calculated and that the district court abused its discretion in basing the net weight of the marijuana on the estimate of the case agent. We review the application of the sentencing guidelines for errors of law, *United States v. Smith,* 888 F.2d 720, 723 (10th Cir.1989),

---

**3.** Although the generally preferred course for challenging the effectiveness of criminal defense counsel is by way of collateral attack under 28 U.S.C. § 2255, *see Beaulieu v. United States,* 930 F.2d 805, 806 (10th Cir.1991), review

of the ineffectiveness claim in this case is appropriate on direct appeal because Defendant's claim is "'confined to matters found in the trial record....'" *Id.* at 807 (citing *United States v. Caggiano,* 899 F.2d 99, 100 (1st Cir.1990)).

*cert. denied,* 494 U.S. 1068, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990), while factual determinations made by the trial court are reviewed for clear error, *United States v. Rutter,* 897 F.2d 1558, 1560 (10th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). A sentencing court need find the facts supporting a sentence only by a preponderance of the evidence. *United States v. Kirk,* 894 F.2d 1162, 1164 (10th Cir.1990).

Defendant points out that the actual net amount of marijuana was never weighed by the government and that the amount used for sentencing was based on an estimate of the weight, attributing eight percent of the gross weight of one hundred pounds to packaging. The estimate yielded a net weight of 41.81 kilograms resulting in a base offense level of 20 under U.S.S.G. § 2D1.1(c)(12).

Citing *United States v. Havens,* 910 F.2d 703, 705 (10th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 687, 112 L.Ed.2d 678 (1991), Defendant argues that the district court should have taken "proper testimony" before accepting an estimate of the ultimate amount of drugs. *Havens,* however, involved the seizure of only small amounts of methamphetamine but large amounts of the precursor chemicals necessary to the manufacture of the drug. *Id.* at 704. In such circumstances, the trial judge must estimate the quantity of the controlled substance in order to more accurately reflect the scale of the offense. *Id.*

Such proof was not needed in this case. Here, there was testimony by Agent Skelton that he weighed the packaged marijuana in the suitcases after having received it from one of the arresting officers and that the packaged marijuana weighed one hundred pounds. Rec. Vol. I at 58, 62; Rec. Vol. VII at 16. Contrary to the United States Customs Service practice of allowing five percent for packaging, Agent Skelton allowed eight percent "to give [Defendant] the benefit of the doubt" since some of the marijuana was packaged in cellophane and some in heavier contact paper. *Id.* at 17. Agent Skelton's estimate was based on his experience with the weights of different types of packaging. *Id.* Based on this evidence, we find that the district court was not clearly erroneous in concluding, by a preponderance of the evidence, that the marijuana possessed by Defendant weighed 41.81 kilograms.

The judgment of the District Court for the District of New Mexico is AFFIRMED.