**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**M.K. FADEL, Defendant–Appellee.**

No. 87–2105.

United States Court of Appeals,
Tenth Circuit.

April 22, 1988.

1426

Joe D. Whitley, Appellate Section, Dept. of Justice, Wayne T. Dance, Asst. U.S. Atty., and Brent D. Ward, U.S. Atty., Salt Lake City, Utah (Samuel Rosenthal, Chief, Appellate Section, Dept. of Justice, Washington, D.C., with them on the brief), for plaintiff-appellant.

Loni F. DeLand, McRae & DeLand, Salt Lake City, Utah, for defendant-appellee.

Before SEYMOUR and MOORE, Circuit Judges, and PHILLIPS *, District Judge.

PHILLIPS, District Judge.

## I.

On March 25, 1987, a federal grand jury sitting in Salt Lake City, Utah returned a three count indictment charging defendant M.K. Fadel with conspiracy to possess and distribute cocaine in violation of 21 U.S.C. § 846, and two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1).

On May 1, 1987 Fadel filed a motion to dismiss the indictment on the grounds of outrageous governmental misconduct and entrapment allegedly arising out of the government's undercover investigation of the case. Prior to the trial of the case, the district court ruled that defendant had been entrapped as a matter of law and dismissed the indictment with prejudice. From this order, the government lodged a timely appeal. We reverse the district court's order and remand the matter for trial.

## II.

In support of his motion to dismiss, Fadel filed an affidavit adopting the "Statement of Facts" portion of his motion. Al-

* The Honorable LAYN R. PHILLIPS, District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

though laced with argument, the Statement of Facts (hereinafter "affidavit") set forth the basic scenario giving rise to Fadel's alleged entrapment. According to Fadel, he and Kay Sugar, the government's confidential informant, were long time friends. Prior to 1986, their friendship was not sexual, and involved minimal contact. In March 1986, while serving as a government informant, Sugar renewed her friendship with Fadel and their relationship became sexually intimate. Sugar subsequently requested Fadel to assist her in obtaining some cocaine which she could sell. According to Fadel, he initially refused to finance her or otherwise involve himself in the venture. Eventually, after repeated requests by Sugar, Fadel agreed to provide financing and make arrangements for a source of supply for the cocaine. Pursuant to this agreement, Fadel purchased cocaine for Sugar on two occasions in early May 1986. Fadel's first cocaine purchase for Sugar occurred on May 3, 1986 and involved one-quarter (¼) ounce of cocaine. Fadel gave Sugar half of this cocaine to sell, with Fadel and Sugar consuming the remaining one-eighth (⅛) ounce. Fadel alleged that he did not profit monetarily from this activity. [Affidavit at 5].

At Sugar's request, Fadel then arranged a second drug purchase involving one ounce of cocaine. This purchase occurred on May 6, 1986. According to Fadel, he agreed to this one last investment so that "he could escape the situation after one more loan and the introduction of his source to her [Sugar] so that he was no longer needed as a financier or a delivery boy." [1] [Affidavit at 5]. Following the delivery of this cocaine, Sugar, who had not yet paid Fadel for the cocaine she had received from him, arranged for Fadel to meet her drug "associate", Mr. Hafen. Hafen, unknown to Fadel, was actually an undercover police officer. Hafen, Fadel and Sugar met at a private nightclub in Trolley Square on May 13, 1986 at which time Hafen paid Fadel $1,800 for the cocaine. Fadel allegedly had no further contact with Hafen and shortly after this meeting ended his relationship with Sugar. Fadel claimed that prior to resuming his relationship with Sugar in the spring of 1986, he "had never distributed cocaine and had only once used the drug." [Affidavit at 3].

Two hearings were held on Fadel's motion to dismiss, the first on May 21, 1987 and the second on June 24, 1987. Prior to the first hearing on May 21, 1987 the government filed no response to Fadel's motion. On the morning of the hearing, the district court permitted the government to file a response to Fadel's motion and present evidence in opposition to the motion. The government's response, other than stating that it "strongly disputed" the defendant's factual contentions, did not specifically address the allegations of Fadel's affidavit. Rather, the government urged that Fadel's motion was premature and inappropriate for pretrial consideration under Rule 12(b) of the Federal Rules of Criminal Procedure.[2] The district court rejected this position and proceeded with the hearing.

At this point the government requested a recess and approximately twenty-five minutes later presented the testimony of Charles Hafen, the undercover police officer who participated in the investigation. At the conclusion of Hafen's testimony, the

---

1. Fadel's alleged source was Carl Schettler, who was charged in Counts one and three of Fadel's indictment as a co-defendant. According to Fadel, during visits to Schettler's home, Fadel, Sugar, Schettler and others would consume small amounts of cocaine, with Sugar "press[ing] very hard" to learn about Schettler and "ingratiate herself with him." [Affidavit at 4, 5]. During these visits, Fadel's sexual relationship with Sugar "progressed to such a point of extreme diversity and openness that on one occasion they engaged in sex in the hot tub at the home of, and in full view of, Carl Schettler."

*Id.* Schettler subsequently entered a plea of guilty to count three of the indictment in connection with the May 6, 1986 distribution.

2. Rule 12(b) limits the court's consideration of pretrial motions to "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue...." As discussed *infra*, several courts have held that pretrial consideration of a motion to dismiss on the basis of entrapment is inappropriate. This Circuit, however, has not addressed the issue.

prosecutor stated that "at this time the government would submit that it has adequately rebutted the allegations in the affidavit such as to create a factual issue for the jury." [Transcript ("Tr.") of May 21 hearing at 29–30]. The prosecutor, when asked by the trial judge if he had any other witnesses, stated that he did not believe it was necessary to call other witnesses and rested. *Id.* at 30. The defendant presented no additional testimony, relying solely on the affidavit of Fadel. Prior to taking a brief recess to allow counsel to prepare for argument, the trial judge informed counsel to be prepared to discuss Fadel's affidavit in detail, identifying the factual disputes created by the testimony of Hafen. *Id.* at 32.

Upon the court's return, the government requested the opportunity to present the testimony of Sugar, who was then present in the courtroom. Defense counsel objected to this request. The prosecutor again stated that he believed the record sufficiently created a factual dispute requiring resolution by the jury and that he was requesting to reopen the record only out of an abundance of caution. *Id.* at 40. In response to this request, the trial judge expressed his concerns about the manner in which the government had proceeded and refused to permit the prosecutor to submit a proffer of Sugar's testimony. *Id.* at 46–47. Rather than hearing the testimony of Sugar, the trial judge took the government's request to reopen under advisement. *Id.*

The district court did not rule on the government's request for over a month. On June 23, at 4:16 p.m., the district court granted the government's request to reopen and scheduled a second hearing for the next day at 1:00 p.m. [Record on Appeal, Doc. # 34]. At the June 24 hearing the government did not produce Ms. Sugar as a witness. The prosecutor stated that he and the investigator did not believe she could be located on such short notice and acknowledged that they had made no attempt to contact Sugar for purposes of the hearing. [Tr. of June 24 hearing at 6–7]. Instead, the government sought to call Carl Schettler, Fadel's co-defendant who on

June 22, 1987 had entered a plea of guilty to Count three of the Indictment. Schettler had been a fugitive until May 26, 1987, and was thus unavailable to testify at the previously held hearing on May 21, 1987. The prosecutor stated that Schettler, Fadel's alleged source of supply and coconspirator, was prepared to directly address the issue of Fadel's predisposition. *Id.* at 3–4, 11. Defense counsel objected to the government calling Schettler. *Id.* at 11.

The district court refused to let anyone other than Sugar testify, and dismissed the indictment with prejudice, stating:

Well, I'm going to grant the motion. I'm going to dismiss it and I'm going to dismiss it with prejudice. And I'm going to do it based upon the failure of the United States Attorney to do his job. And I'm going to reserve the right to write something in that particular area. I don't know what other sanctions may be available when an opportunity is presented to do a job, not once, not twice, but three times. The first time it's set and then a fourth time. That's enough. That's enough.

*Id.* at 12.

The district court subsequently issued a memorandum opinion ["Mem. Op."] filed on July 8, 1987. In that opinion, the trial judge stated that he was dismissing the indictment because the "government has not disputed the defendant's affidavit with respect to his lack of a predisposition to engage in the criminal activity." [Mem.Op. at 15]. The district court specifically rejected officer Hafen's testimony, finding that any comments made by the defendant about his willingness to start with small quantities and later sell kilos did not reflect a willingness to deal in drugs, but rather the statements of an inexperienced individual who wanted Hafen to believe that he was a drug dealer. *Id.* at 16–17. Because the government had not produced Ms. Sugar to testify at the pretrial hearing, the district court concluded that Fadel's cocaine sales to Sugar had been induced by her.

■ The district court, however, squarely rejected defendant's claims of outrageous government conduct arising out of Sugar's sexual relationship with the defendant, noting that the Ninth Circuit had recently dismissed similar contentions in *United States v. Simpson*, 813 F.2d 1462 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987).[3]

On appeal the government contends (1) the district court clearly erred when it found that the government had not disputed Fadel's allegations concerning his lack of predisposition to commit the offenses; (2) the district court abused its discretion by refusing to permit the co-defendant, Carl Schettler, to testify at the June 24, 1987 hearing; and (3) the district court made several erroneous evidentiary rulings at the pretrial hearing, including the exclusion of hearsay testimony.

Because we hold that the testimony of officer Hafen in and of itself was sufficient to create a factual question on the issue of Fadel's predisposition, and thus required a trial on the merits, we need not address the other issues.

### III.

■ Entrapment is an affirmative defense. *Mathews v. United States*, —— U.S. ——, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988); *Martinez v. United States*, 373 F.2d 810, 811–12 (10th Cir.1967). Moreover, as recognized by the Supreme Court, "entrapment is a relatively limited defense." *United States v. Russell*, 411 U.S. 423, 435, 93 S.Ct. 1637, 1644, 36 L.Ed.2d 366 (1973).[4] The defense has two elements: first, government agents must have induced the defendant to commit the offense; and second, the defendant must not have been otherwise predisposed to commit the offense, given the opportunity. *Mathews v. United States*, —— U.S. at ——, 108 S.Ct. at 886; *United States v. Ortiz*, 804 F.2d 1161, 1165 (10th Cir.1986); *United States v. Shapiro*, 669 F.2d 593, 597 (9th Cir. 1982). The defendant's lack of such predisposition is the crux of the entrapment defense. *Hampton v. United States*, 425 U.S. 484, 488–89, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. at 429, 93 S.Ct. at 1641.

Prior to the Supreme Court's recent decision in *Mathews*, a defendant asserting the entrapment defense in the Tenth Circuit was required to admit the essential elements of the offense.[5] *United States v. Mabry*, 809 F.2d 671, 688 (10th Cir.1987); *United States v. Mora*, 768 F.2d 1197, 1198–99 (10th Cir.1985), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 856, 88 L.Ed.2d 895 (1986). In the instant case, the district court found that Fadel had admitted the

---

**3.** Tr. of May 21 hearing at 48. Although the "outrageous conduct" claim is not before us on appeal, it should be noted that the Supreme Court has never held that government "overreaching" in an undercover investigation is a basis for dismissal, nor has any decision of this circuit. Instead, the argument rests upon *dictum* in *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) that "we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction...." The outrageous conduct due process defense has in fact been severely limited. *See, e.g., United States v. Gamble*, 737 F.2d 853 (10th Cir.1984). A defendant seeking dismissal of an indictment on this basis must establish that the police conduct is "shocking to the universal sense of justice." *United States v. Spitz*, 678 F.2d 878, 881 (10th Cir.1982).

**4.** In *Russell*, the lower court, after expressing its concern with "overzealous law enforcement",

reversed the defendant's narcotics conviction because of "an intolerable degree of governmental participation in the criminal enterprise." *United States v. Russell*, 459 F.2d 671, 673–74 (9th Cir.1972). The Supreme Court reversed, expressly disapproving this and similar statements from lower court opinions. 411 U.S. at 428, 435, 93 S.Ct. at 1641, 1644. The defense of entrapment, the Court explained, "was not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it did not approve." *Id.* at 435, 93 S.Ct. at 1644; *see United States v. Warren*, 747 F.2d 1339 (10th Cir.1984).

**5.** The Court in *Mathews* recently rejected this approach, holding "that even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment." —— U.S. at ——, 108 S.Ct. at 886.

essential elements of the offense. [Mem.Op. at 9].[6]

 The issue of whether there is a factual dispute relating to entrapment sufficient to submit the issue to the jury typically arises at the conclusion of a trial, when a district judge must decide if adequate evidence has been presented to warrant an entrapment instruction. *See, e.g., United States v. Ortiz,* 804 F.2d at 1163; *United States v. Fleishman,* 684 F.2d 1329, 1342–43, (9th Cir.) *cert. denied,* 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982); *United States v. Gurule,* 522 F.2d 20, 23 (10th Cir.1975); *Martinez v. United States,* 373 F.2d at 811–12. Although the degree of proof required to submit an entrapment defense to a jury has been described as only "slight" or "some" evidence, the test is whether the evidence, regardless of amount, creates a factual issue. *United States v. Ortiz,* 804 F.2d at 1166 n. 4; *United States v. Fleishman,* 684 F.2d at 1342. A court may find entrapment as a matter of law, however, when the elements of entrapment are uncontradicted. *United States v. Ortiz,* 804 F.2d at 1164; *Martinez v. United States,* 373 F.2d at 812.

What is less clear is the degree of discretion accorded to trial courts to hear and resolve entrapment motions *prior* to trial. The vast majority of courts which have considered the issue have *not* favored the pretrial resolution of entrapment defense motions. *See, e.g., United States v. Yater,* 756 F.2d 1058, 1062–63 (5th Cir.) *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed. 2d 226 (1985); *United States v. Swiatek,* 632 F.Supp. 985, 993 (N.D.Ill.1986); *United States v. Killough,* 607 F.Supp. 1009, 1011 (E.D.Ark.1985); *United States v. Persico,* 520 F.Supp. 96, 98 (E.D.N.Y.1981); *United States v. Myers,* 527 F.Supp. 1206 (E.D.N.Y.1981); *United States v. DePalma,* 461 F.Supp. 778, 794 (S.D.N.Y.1978).

The reasons for such a preference are grounded in the fact that the defense of entrapment is intertwined with the issue of intent and is typically based upon credibility determinations, an area traditionally reserved for jury resolution. *United States v. Yater,* 756 F.2d at 1062–63; *United States v. Jannotti,* 673 F.2d 578, 596–97 (3rd Cir.) *(en banc), cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *United States v. Gurule,* 522 F.2d at 25. The district courts are also understandably reluctant to hold, prior to trial, "mini-trials" devoted to the issues of intent and inducement, complete with dress rehearsals of the trial testimony of government informants and investigative agents. *United States v. Killough,* 607 F.Supp. at 1011. Aside from the repetition between the proof at such motion hearings and the proof at trial, hearings of this type also have the potential for circumventing the discovery rules embodied in the Federal Rules of Criminal Procedure. *See* Fed.R. Crim.P. 16(a), 26.2; 18 U.S.C. § 3500. Some courts, however, have resolved motions alleging governmental entrapment or overreaching prior to trial. *United States v. Criden,* 675 F.2d 550 (3rd Cir.1982); *United States v. Batres–Santolino,* 521 F.Supp. 744 (N.D.Cal.1981).

Although the Supreme Court has never addressed the issue, in a related area, involving the defense of duress, the Court has clearly discouraged the pretrial resolution of motions to dismiss relating to a defendant's intent. *United States v. Knox,* 396 U.S. 77, 83, 90 S.Ct. 363, 367, 24 L.Ed.2d 275 (1969). *Knox* involved an appeal from the dismissal of an indictment charging the defendant with violating 18 U.S.C. § 1001 by making false statements in wagering tax forms. Knox asserted as a defense that the statements were not made "willfully" as required by section 1001, but rather under the compulsion of the federal wagering tax statutes which provide penalties for failure to comply. Knox also asserted that if he had filed truthful returns he would have incriminated himself under the Texas wagering laws. The Supreme Court, in reversing the lower

---

**6.** Although such a finding may be inferred from Fadel's "Statement of Facts", Fadel's motion specifically admitted only the cocaine distributions charged in Counts two and three of the Indictment. [*See* Defendant's Memorandum in Support of Motion to Dismiss at 2]. The motion contained no similar admission with respect to the conspiracy charge.

court's decision to dismiss the indictment, held that "the question whether Knox's predicament contains the seeds of a 'duress' defense, or perhaps whether his false statement was not made 'willfully' ... is one that must be determined initially at his trial." 396 U.S. at 83, 90 S.Ct. at 367. The Court added that "Rule 12(b)(1) of the Federal Rules of Criminal Procedure ... indicates that evidentiary questions of this type should not be determined on such a [pretrial] motion." *Id.* at n. 7, 90 S.Ct. at 83 n. 7.

■ Although duress, like entrapment, focuses on a defendant's state of mind, we are not prepared to say that a district court may *never* decide an entrapment motion prior to trial. Instead, we agree with the Fifth Circuit that such motions are "seldom" appropriate for pretrial resolution under Rule 12(b)(1). *United States v. Yater,* 756 F.2d at 1062–63. This approach is also consistent with the Supreme Court's recent decision in *Mathews,* where the Court stated: "The question of entrapment is *generally* one for the jury, rather than for the court." —— U.S. at ——, 108 S.Ct. at 886 (emphasis added).

In the instant case, as a result of the district court's refusal to permit Ms. Sugar to testify at the May 21 hearing or to permit a proffer of her testimony, coupled with the district court's refusal to permit Fadel's codefendant, Carl Schettler, to testify at the June 24 hearing, the only evidence presented by the government at either of the two hearings before the district court was the testimony of officer Hafen.[7]

The evidence pertaining to Hafen's May 13, 1986 conversation with Fadel must be read in light of the allegations of the indictment. Count one of the indictment charged Fadel with participating in a conspiracy with Schettler and other unknown individuals to possess and distribute cocaine, which conspiracy allegedly began by at least May 6, 1986 and continued until on or about the date of the indictment. In furtherance of the conspiracy, Fadel was alleged in count two of the indictment to have possessed and distributed one-eighth (⅛) ounce of cocaine on or about May 3, 1986. Similarly, in furtherance of the conspiracy, Fadel and Schettler were charged in count three of the indictment with having possessed and distributed approximately one ounce of cocaine on or about May 6, 1986. The May 13 undercover meeting between Fadel, Sugar and Hafen thus occurred ten days after the first alleged sale of one-eighth (⅛) ounce of cocaine, one week after the second alleged one ounce sale, and well within the time period of the narcotics conspiracy alleged in the indictment.

The district court's finding that the Fadel–Hafen conversation "does not present any evidence of predisposition" is clearly at odds with the record. [*See* Mem.Op. at 16]. Fadel's own affidavit admitted receiving $1,800 from Hafen at the meeting as repayment for the cocaine. [Affidavit at 6]. Fadel also admitted that he discussed future drug business with Hafen. *Id.* Indeed, when the detective handed Fadel the $1,800 and told Fadel that the delivery of cocaine had come as a surprise, Hafen testified that Fadel reacted as follows:

> He apologized. He said that's not normally the way he does things. That that was an exception that day, the way the drugs came to him.

[Tr. of May 21 hearing at 16].

According to Hafen's testimony, he and Fadel talked for approximately one hour "about the general cocaine business, how I [Hafen] was involved, how he [Fadel] was involved." *Id.* at 17. Other passages of Hafen's testimony were also relevant to Fadel's predisposition to engage in the trafficking of drugs. In discussing future dealings with Hafen, Fadel stated:

---

7. The government's proof at the pretrial hearing was also limited by the district court's ruling that only non-hearsay was admissible. [Tr. of May 21 hearing at 13]. The government contends that the Federal Rules of Evidence do not even apply to pretrial hearings of the type held in this case pursuant to Fed.R.Evid. 1101(d)(1), while Fadel contends on appeal that such rulings by the district court constitute harmless error. We need not address these issues in light of our holding.

That dealing in small quantities is the way people get arrested. He [Fadel] said that we should start out, I think, with ounces, work to quarter pounds and eventually if we needed to kilos. I think he maybe said something like, it will make *his people* feel comfortable if we begin like that rather than just trying to jump into a kilo because I was talking about kilo prices or dealing in kilos or something along those lines.

*Id.* at 18 (emphasis added).

Hafen, an experienced narcotics detective who had worked undercover on more than fifty occasions, also testified that Fadel's approach to drug trafficking was consistent with that used by other drug dealers:

Q. What types of things did he say that convinced you that he was not just puffing, that in fact he had some chain or some supply route that was available to him for cocaine?

A. Well, basically everything, the way he conducted himself and everthing he said led me to believe that that was true. The way the ounce was delivered. The way he accepted my money and made an apology that was spontaneous. It was not something that he had to seem to think over a long time, and that told me that he knew that was a wrong way of dealing with people that basically knew how to traffic in drugs. And then the general way of taking care of the business, of not dealing much in small quantities. Dealing in large quantities on fewer and fewer occasions. Like I told you, that was all consistent with a good trafficker, someone that's experienced or been around experienced people and been schooled on how it should be done.

*Id.* at 21.

Expert testimony by narcotics agents has been admitted in a number of drug trials to rebut a defendant's alleged innocent behavior. *See, e.g., United States v. Fleishman,* 684 F.2d at 1335–36. Hafen also testified that Fadel quoted him a series of cocaine prices on a graduating scale, ranging from ounces to kilograms. [Tr. of May 21 hearing at 22].

Despite this testimony, the district court drew the inference that "Fadel had no experience in dealing drugs, that this was his first transaction and that his statements about how to deal drugs and his apology to Hafen for conducting the transaction improperly were made in an effort to appear experienced to a person he believed to be a drug dealer." [Mem.Op. at 16].

■ In our view, Fadel's references to "the way he does things", "his people", and his stated desire to work up from "ounces" to "quarter pounds" to "kilos" clearly represent some evidence that Fadel was predisposed to engage in the alleged conspiracy and the two distributions to Ms. Sugar. This evidence, coupled with Fadel's acceptance of the $1,800 payment for the cocaine and the arrangements he admittedly made for both the financing and the source of supply for the two distributions, clearly created a genuine dispute as to whether Fadel was entrapped. Although the district court dismissed Hafen's testimony by finding that defendant's statements were more likely those of a novice, the weighing of such testimony, and the drawing of such an inference, is the exclusive function of the jury. *United States v. Gurule,* 522 F.2d at 25. Another plausible inference was that Fadel was a knowledgeable yet cautious drug dealer. *See, e.g., United States v. Glassel,* 488 F.2d 143, 146 (9th Cir.1973), *cert. denied,* 416 U.S. 941, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974) (where the court noted that the defendant's caution in dealing with two government agents regarding the charged drug sales "would be natural in even the most hardened of criminals"); *see also United States v. Glaeser,* 550 F.2d 483, 487 (9th Cir.1977) (affirming refusal of entrapment instruction on grounds that recorded conversation clearly showed that defendant was predisposed *albeit* cautious).

■ In dismissing Fadel's indictment, the district court placed great emphasis on the government's failure to offer the testimony of Ms. Sugar relating to her contacts with Fadel prior to the May 13 meeting with Hafen. [Mem.Op. at 8, 9]. Whether or not the government initiated the contact

with the defendant, however, is not dispositive of the issue of entrapment. *United States v. Fleischman,* 684 F.2d at 1343; *United States v. Szycher,* 585 F.2d 443, 449–50 (10th Cir.1978); *United States v. Swets,* 563 F.2d 989, 990 (10th Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 (1978). Further, mere assistance by government undercover agents in the commission of a crime does not constitute entrapment. *United States v. Gentry,* 642 F.2d 385, 387–88 (10th Cir.1981).[8] Moreover, in rebutting an entrapment defense, the government is not required to show that the defendant has engaged in prior acts or prior violations of the narcotics laws. *United States v. Swets,* 563 F.2d at 991; *United States v. Szycher,* 585 F.2d at 449.[9]

▮▮▮▮ As acknowledged by the Supreme Court, the crucial factor in an entrapment defense is the predisposition of the defendant rather than the degree of government participation. *Hampton v. United States,* 425 U.S. 484, 488, 96 S.Ct. 1646, 1649, 48 L.Ed.2d 113 (1976). Predisposition is defined as "a defendant's inclination to engage in the illegal activity for which he has been charged, *i.e.* that he is ready and willing to commit the crime." *United States v. Ortiz,* 804 F.2d at 1165. Evidence of predisposition may consist of a showing of a defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity under investigation. *United States v. Ortiz,* 804 F.2d at 1165; *United States v. Jannotti,* 673 F.2d at 597–98, 605–06; *Holloway v. United States,* 432 F.2d 775 (10th Cir.1970); *Cazares–Ramirez v. United States,* 406 F.2d 228, 230 (5th Cir.1969). In short, a defend-

ant asserting an entrapment defense opens himself to a "searching inquiry." *Sorrells v. United States,* 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932).

Here, the testimony of the informant Sugar was not required at the pretrial hearing, nor is it necessary at the trial of the matter, in order to create a jury issue on predisposition. On at least two occasions this Circuit has upheld jury verdicts rejecting entrapment defenses in drug cases where the government informant did not testify at trial. In *United States v. Hayes,* 477 F.2d 868 (10th Cir.1973), under facts similar to those now before us, the defendant alleged that an informant had "repeatedly pleaded" with him to sell drugs. *Id.* at 872. The defendant further alleged that he had never sold drugs until persuaded to do so by the government informant. The defendant in *Hayes,* however, like Fadel in this case, admitted that he had discussed future drug dealings with an undercover agent. Despite the failure of the government to call the informant at trial, the court found the evidence insufficient to support a finding of entrapment as a matter of law. Noting that the defendant's degree of involvement and his own admissions had "weakened" his entrapment defense, the court upheld the conviction. *Id.* at 872.

In the instant case, as in *Hayes,* the defendant's involvement in the transactions, as evidenced by the record developed at the pretrial hearing, was significant. By his own admission, Fadel financed the two drug transactions, arranged for the source of supply, consumed cocaine with Sugar and Schettler, discussed future drug dealings with Hafen, and received an $1,800 payment for the cocaine. These admissions, read in conjunction with Hafen's testimony concerning Fadel's familiarity with the drug business, clearly created a factual

---

8. In the ABSCAM prosecution of *United States v. Myers,* 692 F.2d 823, 846 (2nd Cir.1982), *cert. denied, Criden v. United States,* 461 U.S. 961, 103 S.Ct. 2437, 77 L.Ed.2d 1322 (1983) the Court stated: "The use of dishonest and deceitful informants ... creates risks to which the attention of juries must be forcefully called, but the Due Process Clause does not forbid their employment ... nor specify their compensation." At the trial of this matter, Fadel's counsel will be

able to call to the attention of the jury the role of Sugar and her alleged inducement of Fadel.

9. The Ninth Circuit has recognized that one may be willing to commit his first narcotics offense as much as, if not more than, a chronic offender, who theoretically should be more fearful of the consequences. *United States v. Martinez,* 488 F.2d 1088, 1089 (9th Cir.1973).

dispute similar to the controversy resolved by the jury in *Hayes*, and thus preclude a pretrial finding of entrapment as a matter of law by the district court.

*Hayes* is consistent with other precedent in this Circuit concerning the rebuttal of entrapment defenses. In *United States v. Gurule*, 522 F.2d 20 (10th Cir.1975), a defendant who was convicted for aiding and abetting the distribution of cocaine contended on appeal that he had been entrapped as a matter of law. Specifically, Gurule alleged that no evidence was presented by the government to show that he was predisposed. He further alleged that there was no evidence presented to rebut Gurule's testimony concerning his inducement by the government's informant. As in *Hayes*, the informant in *Gurule* did not testify at trial. Our Circuit in *Gurule* defined entrapment as a matter of law to exist "only when there is undisputed testimony which shows conclusively and unmistakably that an otherwise innocent person was induced to commit the act", and held that the defense of entrapment was not established merely by virtue of the defendant's testimony. *Id.* at 23. The court also relied on other testimony, including statements made by Gurule to undercover officers indicating his familiarity with the drug business, as evidence sufficient to establish predisposition. *Id.* at 24. The *Gurule* court explained:

> [W]e held that even absent the rebutting testimony of the Government's informant, the jury is entitled to disbelieve the uncontradicted portions of testimony of a defendant alleging entrapment. We fail to see any reason why the jury should be accorded less discretion to disbelieve the defendant's uncorroborated testimony that he was supplied narcotics by the informant.

522 F.2d at 24 (citations omitted).

While in both *Hayes* and *Gurule* the entrapment issues were resolved by juries at trial, the implications of these cases are clear for the instant case. As in both *Hayes* and *Gurule*, the government in this case presented sufficient independent evidence of predisposition in the form of officer Hafen's testimony to present a jury question. Regardless of whether Ms. Sugar testified at the pretrial hearing or ultimately appears as a witness in the trial of this matter, we fail to see any reason why a jury should not be given the discretion to believe or disbelieve Fadel's testimony that he was entrapped in light of the conflicting testimony presented by officer Hafen.

## IV.

■■■ Whether there is sufficient evidence to constitute a triable issue of entrapment is a question of law, reviewable by this Court on a *de novo* basis. *United States v. Ortiz*, 804 F.2d at 1164. For the reasons set forth above, we cannot adopt the district court's conclusion that "the record before the Court does not demonstrate a dispute on the elements of entrapment." [Mem.Op. at 18]. Likewise, we reject the district court's conclusion that "[t]here simply is not enough to send to a jury." *Id.* Here, officer Hafen's testimony was sufficient to require a resolution of Fadel's entrapment defense by a jury. It is thus unnecessary to reach the question of whether the district court abused its discretion in refusing to permit the co-defendant Schettler to testify, as well as the government's other allegations of error.[10]

REVERSED AND REMANDED.

---

**10.** In reversing the district court, we are in no way condoning the conduct of government counsel at the hearings on May 21 and June 24, 1987. The record of those hearings reveals a lack of adequate preparation and a failure to timely respond to defense motions and requests of the court. The misdeeds of government counsel in this case, however, do not warrant the drastic remedy of dismissal of the indictment. *See, e.g., United States v. Kilpatrick*, 821 F.2d 1456, 1473–75 (10th Cir.1987), *cert. granted in part*, —— U.S. ——, 108 S.Ct. 693, 98 L.Ed.2d 645 (1988); *United States v. Page*, 808 F.2d 723 (10th Cir.1987).