UNITED STATES of America,
Plaintiff–Appellee,

v.

Lawrence Duane YOUNG,
Defendant–Appellant.

No. 91–1030.

United States Court of Appeals,
Tenth Circuit.

Jan. 21, 1992.

Michael G. Katz, Federal Public Defender, and Mark J. Rosenblum, Asst. Federal Public Defender, Denver, Colo., for defendant-appellant.

Michael J. Norton, U.S. Atty., Guy Till, Kathleen M. Tafoya, and John M. Hutchins, Asst. U.S. Attys., Denver, Colo., for plaintiff-appellee.

Before McKAY, Chief Judge, LOGAN, Circuit Judge, and SAM, District Judge.*

LOGAN, Circuit Judge.

Defendant Lawrence Duane Young appeals his conviction in a jury trial of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 846, and aiding and abetting attempted possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 812, 841(a)(1), 846; 18 U.S.C. § 2. On appeal defendant argues that the district court should have granted his motion for acquittal because defendant was entrapped as a matter of law or, alternatively, because the government failed to prove beyond a reasonable doubt that defendant was not entrapped. Defendant also argues that the evidence was insufficient to support a conviction for conspiracy.[1]

The Internal Security Division of the Internal Revenue Service (IRS) placed a female undercover informant, Jacqueline McSwane, at an IRS automated collection service site in Englewood, Colorado, to assist in an investigation of suspected illegal drug activity at the site. Defendant was employed by the IRS at Englewood and became acquainted with McSwane. In a telephone conversation, defendant told McSwane that he liked to smoke marijuana, and McSwane responded that she too liked to smoke marijuana. During the next four months, defendant and McSwane discussed

---

* The Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

1. After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R.App.P. 34(f); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

the availability of marijuana. Some time later McSwane, acting under the direction of the government, offered to sell defendant a large amount of marijuana. Defendant agreed to purchase some marijuana and then arranged for another party, Rosa Casillas, to purchase nine pounds. Defendant told Casillas that the marijuana cost $900 per pound for nine pounds when in fact the cost was $800 per pound. Defendant intended to use the deception to acquire a tenth pound of marijuana for himself at no cost. The sale went off as planned, and defendant and Casillas were in the process of leaving to get money for an additional fifteen pounds when they were arrested.

## I

### A

■ We first consider whether the district court erred in denying defendant's motion for judgment of acquittal on the ground that defendant was entrapped as a matter of law. We review a district court's denial of a motion for judgment of acquittal viewing all the evidence and drawing all reasonable inferences in the light most favorable to the prosecution. *United States v. Frank,* 901 F.2d 846, 848 (10th Cir.1990).

■ The defense of entrapment is generally an issue for the jury and not for the court. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988). If there is any conflicting evidence upon which a jury could find no entrapment, the issue must be determined by the jury. *See United States v. Fadel,* 844 F.2d 1425, 1430 (10th Cir.1988); *Martinez v. United States,* 373 F.2d 810, 812 (10th Cir. 1967). Entrapment will be found as a matter of law by a court only if all the elements of entrapment are uncontradicted. *Fadel,* 844 F.2d at 1430; *United States v. Ortiz,* 804 F.2d 1161, 1164 (10th Cir.1986).

■ The elements required to find entrapment are: "first, government agents must have induced the defendant to commit the offense; and second, the defendant must not have been otherwise predisposed to commit the offense, given the opportuni-

ty." *Fadel,* 844 F.2d at 1429; *see also Mathews,* 485 U.S. at 63, 108 S.Ct. at 886. Once a credible entrapment defense is raised, the prosecution has the burden of proving, beyond a reasonable doubt, that a defendant was not entrapped. *United States v. Gurule,* 522 F.2d 20, 25 (10th Cir.1975), *cert. denied,* 425 U.S. 976, 96 S.Ct. 2177, 48 L.Ed.2d 800 (1976). The two elements of entrapment are closely related and often the same evidence and arguments will speak to both elements. The primary distinction between these elements is that inducement focuses on the government's conduct while predisposition focuses on a defendant's attitude or condition.

### B

■ The inducement element of entrapment requires more than establishing that the government "solicited, requested or approached the defendant to engage in criminal conduct." *Ortiz,* 804 F.2d at 1165.

"'Inducement' may be defined as government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense. This definition implicates the obvious question of whether the defendant was eager or reluctant to engage in the charged criminal conduct. Governmental inducement may take the form of 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.'"

*Id.* (quoting *United States v. Burkley,* 591 F.2d 903, 913 & n. 18 (D.C.Cir.1978), *cert. denied,* 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782 (1979)).

The predisposition element of entrapment is "defined as a defendant's inclination to engage in the illegal activity for which he has been charged, i.e. that he is ready and willing to commit the crime." *Id.* We note that "[e]vidence of predisposition may consist of a showing of a defendant's desire for profit, his eagerness to participate in the transaction, his ready response to the government's inducement offer, or his demonstrated knowledge or experience in the criminal activity under in-

vestigation." *Fadel*, 844 F.2d at 1433. The fact that a defendant has not previously engaged in the specific crime alleged does not conclusively establish no predisposition to commit the crime. *See id.* ("in rebutting an entrapment defense, the government is not required to show that the defendant has engaged in prior acts or violations of the narcotics laws"); *United States v. Hunt*, 749 F.2d 1078, 1085 (4th Cir.1984) ("[p]redisposition ... does not require 'specific prior contemplation of criminal conduct' ") (quoting *United States v. Williams*, 705 F.2d 603, 618 (2d Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983)), *cert. denied*, 472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985).

■ Applying this statement of the law to the facts of this case, we hold that there was sufficient evidence to create a question of fact for the jury regarding the defense of entrapment; the evidence of inducement and predisposition was *not* uncontradicted. Regarding inducement, although the government presented the opportunity for defendant to purchase large quantities of marijuana, the evidence does not point to any " 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.' " *See Ortiz*, 804 F.2d at 1165 (quoting *Burkley*, 591 F.2d at 913). The evidence suggests that defendant was ready and willing to participate in the criminal activity and not pressed into the deal by the government's conduct. Defendant's relationship with the informant, McSwane, was friendly but not romantic or intimate. Defendant testified that he hoped their relationship might in the future gain a romantic aspect, but he acknowledged that there was no actual romantic involvement. Defendant and McSwane had regular but not daily contact at work and over a period of about three to four months they exchanged what defendant conservatively estimated to be eight personal telephone calls. McSwane testified that in the three months before the calls working out the drug deal, she had initiated calls to defendant five times, and defendant had initiated calls to her a number of times. Recordings of five conversations between defendant and McSwane were admitted into evidence and heard by the jury. On these facts, a jury could find that the level of contact was not persistent enough to be harassing or coercive, nor was the relationship such that defendant would feel compelled to respond affirmatively to McSwane's offer.

Moreover, there was evidence upon which a jury could find that defendant was not persuaded to engage in the marijuana purchase. During an early telephone conversation initiated by defendant, he told McSwane of his marijuana habit, and in subsequent conversations they discussed marijuana and its availability. In one conversation, defendant suggested that McSwane check her side of town for a marijuana source and defendant would check his side of town for a marijuana source, and they would communicate if they found one. McSwane sometime later notified defendant of an opportunity to purchase whatever quantity he wanted from her "brother." Defendant willingly, and apparently without hesitation, accepted the offer and eventually requested ten pounds of marijuana. Defendant himself named the amount of marijuana and arranged with Casillas, whom McSwane had never met before, for the purchase. Based on these facts, a jury could find that the government did not induce defendant to commit the crime. Merely presenting defendant with the opportunity to commit the crime is *not* inducement. *See Ortiz*, 804 F.2d at 1165. On this basis alone, the court could not have found entrapment as a matter of law.

C

■ As to the second element of entrapment, predisposition, there was also sufficient evidence to create an issue for the jury. The evidence shows that defendant purchased and used marijuana regularly. Defendant admitted that he asked McSwane if she knew where he could get marijuana. As noted above, defendant willingly, apparently without hesitation, accepted McSwane's offer to buy marijuana. Defendant wished to make a profit from

the deal of either $1,000, as he told McSwane, or one pound of free marijuana, as he testified at trial. A free pound of marijuana resulting from a drug deal is profit, of course, just as $1,000 cash would be profit. Furthermore, defendant himself raised the possibility of the deal with Casillas and orchestrated her participation in the purchase. Also, there was testimony from which a jury could conclude that defendant was purchasing all ten pounds of marijuana and then selling nine pounds to Casillas at a higher price. There was testimony indicating that defendant had in the past tried to help a former IRS employee obtain marijuana which the employee intended to sell. We hold that evidence of defendant's desire for profit, his apparent eagerness and willingness to participate in the transaction, and his unprompted actions arranging involvement of a coconspirator was sufficient to require the judge to send the issue of entrapment to the jury for their determination. *See Fadel,* 844 F.2d at 1433–34; *United States v. Dickens,* 524 F.2d 441, 445 (5th Cir.1975), *cert. denied,* 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).

## II

Defendant argues that even if the issue of entrapment was properly submitted to the jury, the evidence was insufficient to prove defendant was not entrapped. This court will overturn a "jury's rejection of the entrapment defense only if *no* reasonable jury could have found that the government proved ... beyond a reasonable doubt" that there was no entrapment. *United States v. Jenrette,* 744 F.2d 817, 822 (D.C.Cir.1984) (emphasis added), *cert. denied,* 471 U.S. 1099, 105 S.Ct. 2321, 85 L.Ed.2d 840 (1985). Based upon the evidence discussed above and resolving all issues of credibility in favor of the government, a reasonable jury could have found beyond a reasonable doubt that there was no entrapment. There was sufficient evidence for the jury to conclude both (1) that there was no inducement by the government and (2) that defendant was predisposed to commit the crimes of aiding and abetting attempted possession of marijuana

with the intent to distribute and conspiracy with intent to distribute marijuana.

## III

### A

■ Defendant also contends that the evidence was insufficient to support defendant's conviction for conspiracy to possess with intent to distribute marijuana. We will overturn a jury's conspiracy conviction only if, after review of both direct and circumstantial evidence, we believe no reasonable jury could find defendant guilty beyond a reasonable doubt. *E.g., United States v. Fox,* 902 F.2d 1508, 1513 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990); *see also Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (In reviewing for sufficiency of the evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."). Because criminal conspiracies by their nature are generally secret, often carefully concealed and may even be unarticulated, conspiracy may be found based solely upon circumstantial evidence. *See United States v. Staggs,* 881 F.2d 1546, 1550 (10th Cir.1989) ("common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence"), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *United States v. Pinto,* 838 F.2d 426, 430 (10th Cir.1988) (agreement may be inferred from circumstances).

■ The elements of the crime of conspiracy are: (1) the existence of a conspiracy (either express or understood); (2) the defendant knew the essential objectives of the conspiracy; and (3) the defendant knowingly and voluntarily participated in the conspiracy. *E.g., United States v. Esparsen,* 930 F.2d 1461, 1471 (10th Cir.1991), *petition for cert. denied,* — U.S. ——, 112 S.Ct. 882, 116 L.Ed.2d 786 (1991). To find existence of, and participation in, a conspiracy, a reasonable jury must be able

to find "that the conspirators had a unity of purpose or a common design and understanding" to commit the criminal offense alleged. *Pinto,* 838 F.2d at 430. Moreover,

> "[t]he conduct of the alleged coconspirators, including the defendant, may be diverse and far-ranging, but it must be interdependent in some way. Thus, if the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole, evidence of interdependence is present."

*United States v. Horn,* 946 F.2d 738, 740–41 (10th Cir.1991) (citation omitted). Finally, we note that participation in a conspiracy does not require that a defendant know all the details of the conspiracy or all the conspirators. *United States v. Bowie,* 892 F.2d 1494, 1497 (10th Cir.1990).

### B

■ The question is whether there is insufficient evidence to find the existence of a conspiracy between defendant and Casillas to possess with intent to distribute marijuana. Defendant argues that he did not intend to distribute marijuana—he only intended to obtain one pound of marijuana for his own personal use. We believe, however, that an alternative and legitimate reading of the evidence is that defendant's *motive* for participating in the marijuana sale was to obtain a pound of marijuana for his own personal use. Motive is not a state of mind. *Black's Law Dictionary* explains: "Intent and motive should not be confused. Motive is what prompts a person to act, or fail to act. Intent refers only to the state of mind with which the act is done or omitted." *Black's Law Dictionary* 727 (5th ed. 1979). Defendant need not intend to personally distribute the marijuana so long as the conspiracy, which he has knowingly joined himself to, has the objective and intent of distributing marijuana. *See Horn,* 946 F.2d at 740 (activities of coconspirators may be diverse as long as they are interdependent).

■ There was here sufficient evidence for the jury to find defendant knowingly and voluntarily participated in a conspiracy that intended to possess and distribute marijuana. In his testimony defendant admitted that he approached Casillas, who he knew distributed marijuana, about purchasing marijuana from McSwane's "brother." III R. 90–91. Defendant thought that by putting Casillas in touch with this supposed supplier she might repay him by putting more marijuana in the bags he purchased from her. Defendant also testified that he intended to personally benefit from the sale to Casillas by charging her a higher price per pound so that he might secretly finance the purchase of a pound of marijuana for himself. There was sufficient evidence for the jury to find that defendant knew that the nine pounds of marijuana defendant and Casillas were attempting to acquire were for distribution. Defendant knew Casillas was a dealer and he had bought marijuana from her a number of times. There is no suggestion in the record that the nine pounds were not for distribution. The very quantity of nine pounds of marijuana, in the context of a sale to a known dealer, is sufficient evidence for a reasonable jury to find that defendant knew the marijuana was for distribution and not personal use. *See United States v. Adamo,* 882 F.2d 1218, 1224–25 (7th Cir.1989) (quantity of drugs alone is enough for a jury to find that defendant was aware that drugs were not for personal use but for resale). Furthermore, the evidence is uncontradicted that defendant made the arrangements for the sale with McSwane; drove Casillas to the spot where the deal was to take place; introduced Casillas to McSwane; was present for the sale; physically received the money from Casillas and gave it to the undercover agent; intended to take Casillas to collect more money to purchase an additional fifteen pounds of marijuana; knew that Casillas got the money from someone else; knew that the marijuana was to be delivered to a third party; and intended to transport the marijuana to a third party. This uncontradicted evidence is enough for a reasonable jury to find beyond a reasonable doubt that defendant was participating in a conspiracy to distribute marijuana. *See United States v.*

*Townsend,* 924 F.2d 1385, 1403 (7th Cir. 1991) ("We have affirmed conspiracy convictions in the past where the defendant played a significant role in facilitating a drug transaction between others."). Defendant and Casillas had a common objective of obtaining several pounds of marijuana and delivering them to a third party, and in fact defendant's scheme of obtaining a free pound of marijuana was dependent upon the successful purchase of the other nine pounds for distribution.

From the evidence the jury could have found a conspiracy between defendant and Casillas to possess with intent to distribute to the third person who apparently financed the drug deal, or a conspiracy between defendant, Casillas and the third person or persons financing the deal to possess with intent to distribute marijuana. *Bowie,* 892 F.2d at 1497 (defendant need not know identity of all conspirators).

The instant case is similar to *United States v. Cea,* 914 F.2d 881 (7th Cir.1990), in which a defendant claimed to be a mere go-between or broker in a drug transaction and therefore not guilty of conspiracy to possess with intent to distribute cocaine. The defendant argued that the third party alone "was to possess the cocaine and decide what he would do with it, not him." *Id.* at 887. The court found that the defendant "was involved in all aspects of the negotiations. He was not just present at the scene because of a mere association with the other wrongdoer.... [He] worked diligently in trying to set up the transaction from which he expected to profit." *Id.* On these facts, the court upheld the defendant's conspiracy conviction. *Id.*

AFFIRMED.